## DATE OF RELIEF FROM STOCKHOLDERS' DOUBLE LIABILITY.

[Common Pleas Court of Champaign County.]

THE SHEETS MANUFACTURING COMPANY v. THE NEER MANU-
FACTURING COMPANY ET AL.

Decided, April 28, 1906.

*Ohio Corporations—Double Liability of Stockholders of—Terminated, When—Constitutional Amendment Self-Executing—Repeal by Implication—Old and New Sections 3258 and 3258a.*

1. The amendment of Section 3 of Article XIII of the Constitution of the state, which went into effect November 23, 1903, repealed by implication the provision of Section 3258 as to double liability of stockholders, which was in force at that time.
2. Moreover, the provision of this amendment, that "in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her," does not merely indicate a line of policy without supplying the means by which such policy is to be carried into effect, but is absolutely prohibitory in its character and became self-executing.
3. It follows, therefore, that stockholders in Ohio corporations are relieved from double liability for debts incurred by such corporations, not only from and after the legislative enactment of April 25, 1904, but from the going into effect of the constitutional amendment on November 23, 1903.

MIDDLETON, J.

This action is brought by the plaintiff against the Neer Manufacturing Company and the stockholders of said company to enforce the stockholders' statutory liability. Among these stockholders are John M. Niles and Amanda J. Niles.

The action is brought upon an account in the sum of $198.99, a copy of the account is annexed to the petition marked "Exhibit A" and made a part thereof. The only item of debit in said account is dated March 17, 1904—"To lumber, $401.75." There are two credits in the account, one of May 27, 1904, $200; one of August 30, 1904, $2.76, making a total credit of $202.76, and leaving a balance due upon said account of $198.99,

the amount sued upon. The petition contains the usual averments necessary to show the liability of the several defendant stockholders, but there is no averment in the petition that any one of the defendant stockholders is indebted to the defendant company for unpaid stock owned by him or her.

The defendants, John M. Niles and Amanda J. Niles, each demur to the petition for the reason that the same does not state facts sufficient to constitute a cause of action against them.

The indebtedness in favor of the plaintiff, the Sheets Manufacturing Company, as shown by the account made a part of the petition, was contracted March 17, 1904, and in support of the demurrer filed by these two defendants it is urged that upon this date, March 17, 1904, there was no double liability attaching to stockholders of a corporation under the Constitution and statutes of the state of Ohio, and as the petition contains no averment that either of these defendants were indebted to the defendant company for unpaid stock subscription owned by them, that no cause of action is stated in the petition against either, and, therefore, the demurrer should be sustained.

The question thus raised leads to a consideration of the liability of stockholders of a corporation under the old Constitution of 1851, Section 3, Article XIII, and the statute enacted to enforce such constitutional provisions, Sections 3258 and 3258a of the Revised Statutes as amended and enacted April 29, 1902, and the effect upon the provisions of the Constitution of 1851 and the statute passed to carry the same into effect by the amendment of Section 3, Article XIII, adopted November 3, 1903, and which became a part of the Constitution November 23, 1903, and the act of the Legislature of Ohio, passed April 25, 1904., amending Sections 3258 and 3258a of the Revised Statutes of Ohio, for the purpose of carrying into effect the constitutional amendment of November 23, 1903; also an act of the General Assembly of Ohio, passed April 29, 1902.

The indebtedness in favor of the Sheets Manufacturing Company, the plaintiff, upon which the suit is commenced, was contracted March 17, 1904, between the time when the amendment to the Constitution adopted November 3, 1903, became a part

of the Constitution, to-wit, November 23, 1903, and the enact-
ment of the statute carrying into effect this amendment to the
Constitution passed by the Legislature April 25, 1904; and it is
contended by counsel for the plaintiff that this being so the
provisions of the old statute remained in effect until the passage
of the act of April 25, 1904, and hence double liability attached
to the defendant stockholders at the time this indebtedness was
contracted, March 17, 1904.

The only question argued by counsel by briefs submitted in
support of or against the demurrers is whether or not the amend-
ment to the Constitution, which went into effect November 23,
1903, is or is not self-executing.   If self-executing, no double
liability, it is claimed, could attach to these stockholders at the
time the debt was contracted; but there are other questions,
in the opinion of the court, involved in a full consideration and
determination of  the questions raised by the demurrers, and
these the court has thought necessary to consider in arriving at
a conclusion.

The provisions of the Constitution of 1851 are as follows:

Section 3, Article XIII.   Dues from corporations shall be
secured by such individual liability of the stockholders and other
means as may be prescribed by law; but in all cases each stock-
holder shall be liable over and above the stock by him or her
owned, and any amount unpaid thereon, to a further sum at
least equal in amount to such stock.''

Prior to the amendment of April 29, 1902, repealing the same,
Section 3258 of the Revised Statutes provided as follows:

''The stockholders of a corporation which may hereafter be
formed and such stockholders as are now liable under former
statutes shall be deemed and held liable in addition to their
stock in an amount equal to the stock by them subscribed, or
otherwise acquired, to the creditors of the corporation to secure
the payment of the debts and liabilities of the corporation.''

On April 29, 1902, the Legislature passed an act amending
and repealing Section 3258, found in Ohio Laws, Vol. 95, page
312, which act provides as follows:

''The stockholders of a corporation who are the holders of
its shares at a time when its debts and liabilities are enforcible

against them, shall be deemed and held liable, equally and ratably, and not one for another, in addition to their stock, in an amount equal to the stock by them so held, to the creditors of the corporation, to secure the payment of such debts and liabilities; and no stockholder who shall transfer his stock in good faith, and such transfer is made on the books of the company, or on the back of the certificate of stock properly witnessed or tendered for transfer on the books of the company prior to the time when such debts and liabilities are so enforcible, shall be held to pay any portion thereof."

On November 3, 1903, by a vote of the electors, Section 3, Article XIII of the Constitution was amended, which amendment provides as follows:

"Section 3. Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her."

This amendment became a part of the Constitution November 23, 1903.

On April 25, 1904, the Legislature passed an act repealing Sections 3258 and 3258a, which provides as follows:

"Section 3258. The stockholders of a corporation who are holders of its shares at a time when its debts and liabilities are enforcible against them, shall be deemed and held liable, equally and ratably, and not one for another, in addition to their stock, in an amount equal to the stock by them so held, to the creditors of the corporation, to secure the payment of such debts and liabilities, and no stockholder who shall transfer his stock in good faith, and such transfer is made on the books of the company, or on the back of the certificate of stock properly witnessed or tendered for transfer on the books of the company prior to the time when such debts and liabilities are enforcible, shall be held to pay any portion thereof. Provided, however, that the above provision of this section shall not apply to stockholders in any corporation created after the 23d day of November, 1903, nor shall it apply to any debts or liabilities of any corporation incurred after said date; and as to all debts and liabilities of corporations for profit incurred after said date, the stockholders of such corporations shall be under no liabilities other than thus stated in Article XIII, Section 3 of the Constitution of Ohio."

This act of April 25, 1904, is intended to carry into effect the amendment to Section 3, Article XIII of the Constitution, which became a part of the Constitution November 23, 1903, and to preserve to creditors of corporations their right to hold stockholders liable for debts and liabilities incurred prior to the amendment; and by express provisions relieves stockholders of any corporation created after November 23, 1903, from double liability and also from double liability for any debts or liabilities incurred after said date.

The debt upon which this action is brought was incurred by the corporation after November 23, 1903, to-wit, March 17, 1904. If, therefore, this act of April 25, 1904, is a valid constitutional enactment no double liability attached to the defendant stockholders on account of the debt, and the demurrers should be sustained.

Is this act in violation of the constitutional provisions in effect at the time of its passage? Counsel have cited a decision of the Circuit Court of the Seventh District (Mahoning county) rendered at its March Term, 1905, the case of *Swift & Company* v. *Youngstown Baking Company et al*, 6 C. C.—N. S., 89, in which the court held (two judges concurring and one dissenting) the act of April 29, 1902, in violation of Section 3, Article XIII of the Constitution and wholly inoperative, and in which the court say in concluding the reported opinion, "The same holding should be made as to the act of April 25, 1904 (97 O. L., 390)."

I have been unable to see how the validity of this act was drawn into the consideration of that case or any reasoning of the court leading to this conclusion. The liabilities upon which the action was brought in that case were all incurred between January 1, 1903, and May 2, 1903, and prior to the amendment which became a part of the Constitution November 23, 1903.

In that case the circuit court had under consideration the validity of the act of April 29, 1902, under the Constitution as it was when the act was passed, and basing its opinion on the decision of the Supreme Court, *Brown* v. *Hitchcock*, 36 O. S., 667, 678, and *Harpold* v. *Stobart*, 46 O. S., 397, held the act void.

In passing upon the case the court says:

"It is conceded that the Supreme Court has distinctly decided in two cases under the statutes that preceded the act of April 29, 1902, that the stockholders became liable at least as guarantor or surety from the date the debt was contracted, and any subsequent sale and transfer of his stock, although *bona fide* made, did not release him. The majority of the court is of the opinion that these cases distinctly decide that by the provision of Section 3, Article XIII, by its terms independent of the statute, the liability of the stockholders attaches at the time the liability is incurred by the corporation, and that that is the settled law of this state under the Constitution as construed by the Supreme Court, and, therefore, the act of April 29, 1902, is in violation of the Constitution of the state."

Now let us consider the provisions of the Constitution in force with reference to the liability of stockholders when the cases of *Brown* v. *Hitchcock* and *Harpold* v. *Stobart* were decided by the Supreme Court, and when the above case was decided by the circuit court. The constitutional provision was:

"Dues from corporations shall be secured by such individual liability of stockholders and other means as may be prescribed by law; but in all cases each stockholder shall be liable, over and above the stock by him or her owned and any amount unpaid thereon, to a further sum at least equal in amount to such stock."

In the case of *Brown* v. *Hitchcock*, Judge White, in announcing the opinion of the court, says:

"The Constitution in providing for the creation of corporations by the General Assembly prescribed as a condition to their creation that the creditors of such corporations, in addition to the liability of the corporation, shall be secured by the individual liability of the stockholders. The constitutional provision is as follows."

Then follows a statement of the constitutional provisions as above quoted.

The act of April 29, 1902, provided that only stockholders of a corporation, who were the holders of its shares at a time when its debts and liabilities were enforcible against them, should be deemed and held liable, etc., and further provided

that no stockholder who shall transfer his stock in good faith, etc., prior to the time. when such debts and liabilities are so enforcible shall be held to pay any portion thereof.

This act, changing the liability of the stockholders of a corporation from the liability imposed upon them by the Constitution as construed by the Supreme Court in the two cases referred to, the circuit court held to be wholly inoperative and void.

But what were the provisions of the Constitution relative to securing dues from corporations and the individual liability of stockholders when the act of April 25, 1904, was passed? No one will question but that the Constitution with respect to these subjects had undergone a change, a very material one; that the amendment to Section 3, Article XIII, of that instrument adopted by a vote of the people November 3, 1903, became a part of the Constitution November 23, 1903.

This amendment is as follows:

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholders be individually liable otherwise than for unpaid stock owned by him or her."

This was the constitutional provision relating to dues from private corporations under which the act of April 25, 1904, was passed.

Is such act then constitutional? It is well settled that a statute should not be declared unconstitutional unless it is clearly and unreconcilably so. If a doubt exists as to the constitutionality of a statute the benefit of the doubt is to be given to the law. It first secures to the creditors of a corporation their right to enforce double liability against stockholders, as such right existed up to the time of the amendment, on all debts and liabilities contracted prior to that time, and releases stockholders from double liability for any debts or obligations incurred by the corporation subsequent to the amendment. I am unable to see, therefore, how this law in any manner violates the provisions of the Constitution, Section 3, Article XIII, as they stood at the time of its enactment.

It might be claimed that the retroactive feature of this act, applying as it does to all debts and obligations incurred after

November 23, 1903, renders it void as impairing the obligation of contract, but this contention I am of the opinion would not be well founded.

It is true the relation between the creditors of a corporation and the stockholders concerning their individual liability for the debts of the corporation is held to be in the nature of a contract (*Brown* v. *Hitchcock*, 36 O. S., 667, and cases cited thereunder); but such relation there cited results from constitutional and statutory provisions imposing individual liability upon stockholders and it follows, therefore, if there are no constitutional and statutory provisions imposing such individual liability at the time the debt is contracted, no such relation arises between the creditor and stockholder.

In the case of *Brown* v. *Hitchcock*, above cited, White, Judge, says:

"Our Constitution and laws make it an essential condition to persons availing themselves of the instrumentality of a corporation for the transaction of business that the security of their personal liability shall attach to and attend all corporate liabilities."

After the amendment of Section 3, Article XIII, became a part of the Constitution November 23, 1903, there was no double liability attaching to stockholders of a corporation by virtue of any constitutional provision, and in the opinion of the court no statutory law in force providing such liability, and here we have, in the opinion of the court, an instance in which the amendment to the Constitution of November 23d in a way enforces itself. In the opinion of the court Section 3258 of the Revised Statutes was inconsistent with the amendment to the Constitution of November 23d and by implication was repealed by it when it took effect; at least so much of said section as provided double liability of stockholders was repealed.

Repeals by implication are not favored, and still it is well settled that where the repugnancy between the provisions of two statutes is clear and so contrary to each other that they can not be reconciled, the later will operate as a repeal of the former and the same rule applies when the repugnancy exists between a constitutional provision and a legislative enactment.

Judge Ranney in *Ohio, ex rel*, v. *Dudley*, 1 O. S., p. 441, stating the rule as above, says:

"This rule is the result of a long course of decisions and we know of no reason why it does not equally apply when the repugnancy is alleged to exist between a constitutional provision and a legislative enactment."

The same doctrine is announced in *Cass* v. *Dillon*, 2 O. S., 607; *The State, ex rel*, v. *The Trustees of Union Tp.*, 8 O. S, 394; *Com. of Knox Co.* v. *Nicholas*, 4 O. S., 260.

In these cases no such repugnancy between the constitutional provisions and the legislative enactment was found to exist as would warrant the holding that the former repealed the latter by implication, but the rule is clearly stated that had such repugnancy existed, the rule of repeal by implication would apply.

A decision directly in point in this case in the opinion of the court is found in the case of *The State, ex rel*, v. *The Governor of Ohio*, 5 O. S., p. 528 (discussion by the court on pages 539 and 540).

In passing the act of April 25, 1904, the Legislature seems to have taken a different view of the effect of the amendment on Sections 3258 and 3258a, Revised Statutes, because by the act it expressly repeals these sections; but this is of little consequence, if as this court thinks there was such repugnancy between the amendment and the statute that both could not stand. The statutes, Section 3258 and 3258a, at the time of the amendment provided that:

"The stockholders of a corporation who are the holders of its shares at the time when its debts and liabilities are enforcible shall be deemed and held liable in addition to their stock by them held to the creditors of the corporation to secure the payment of such debts and liabilities."

The amendment to the Constitution of November 23, 1903, provides:

"In no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her."

It, therefore, seems to the court that these provisions, at least as far as they relate to double liability of stockholders,

are so repugnant and contrary to each other that they can not be reconciled and that the statute ceased to operate when the amendment took effect.

A case bearing a very close analogy to this case is found in the 69 N. C., Rep., at page 419, the case of *The State* v. *King*.

The indictment against the defendant King was found at the fall term, 1872, and charged that on the first day of May, 1863, the defendant burned a grist mill willfully and feloniously against the form of the statute. The judge quashed this bill and the state appealed. At the time this offense was alleged to have been committed in 1863 the law punished the offense with death (Section 2, Chapter 34 of the Revised Code of that state). In 1868 the Constitution of the state, Article XI thereof, was enacted as follows:

"Section 1. The following punishment only shall be known to the laws of this state, viz: death, imprisonment with or without hard labor, fines, removal from office, etc.

"Section 2. Murder, arson, burglary and rape, and these only may be punished with death if the General Assembly shall so enact."

On the 10th day of April, 1869, the next year after the enactment of the constitutional provision just referred to, the General Assembly passed an act as follows:

"Every person convicted of any crime whereof the punishment hitherto has been death by the laws of North Carolina, existing at the time the present Constitution went into effect, other than the crimes before specified (among which crimes specified in the act was not included the one charged, to-wit, willfully and feloniously burning a grist mill), shall suffer imprisonment in the state's prison for not less than five nor more than sixty years."

Counsel for the defendant in this case contended that he could not be punished by the Revised Code for that had been repealed by the Constitution or by that in connection with the act of 1869; nor by that act because it was not retrospective; nor by the common law because by that the offense was only a mindemeanor, and the prosecution of a misdemeanor was barred after two years.

In passing upon this case the court says:

"We think the counsel takes a mistaken view of the intent and effect of the Constitution. The effect of his interpretation of Sections 1 and 2 of Article XI would be that immediately upon the adoption of the Constitution all offenses which were punishable otherwise than by fines and imprisonment (including murder, arson, burglary and rape), would cease to be punishable by the Legislature. We say, including murder, etc., for it was evidently the intention of Section 2 that these offenses should cease to be punishable with death, unless the Legislature should so enact. It is true that counsel does not push his proposition quite so far; he admits that the common law punishment would be imposed provided the offense was not out of date. But it can not have been the intention of the Constitution to restore, for the interval which must have been forseen between its adoption and the action of the Legislature, the common law punishment, for among these were whipping and the pillory, the very punishments which it was most anxious to prohibit."

And then the court adds further along in the opinion—

"The Constitution does not repeal Section 2 of Chapter 34 of the Revised Code; it repeals only so much of it as imposes death as a punishment for this offense."

It will seem that the court in this case held that the constitutional enactment of 1868 repealed, upon its going into effect, that portion of the statute or of the Revised Code of the state, which made the offense of willfully and feloniously burning a structure, such as was described in the statute, punishable by death; and it will be noticed further that in this case the court, without holding that all the provisions of this statute was repealed by the constitutional enactment, held that the prohibitory matter contained in the constitutional provision, and which was inconsistent and irreconcilable with the statute, repealed the statute to that extent.

By a parity of reasoning I can see no reason why the amendment amending Section 3, Article XIII of the Constitution of the state, of November 23, 1903, which is absolutely prohibitory in its character, should not be held to have repealed, by implication at least, the provisions of Section 3258 of the Revised Statutes in force at the time of the adoption of this amendment, providing for double liability.

And now as to the question of whether or not this amendment to the Constitution, independent of the question of repeal by implication, is or is not self-executing.

It is no doubt true that often new constitutional provisions are treated as inoperative until rendered effective by subsequent legislation, and in such cases those whose rights are affected by such provisions remain as before their adoption until the enactment of a statute rendering them effective. And that such provisions will be held to be inoperative in cases where the object sought to be accomplished by them is made to depend in whole or in part upon subsequent legislation. And it seems to be well settled by the weight of authorities that constitutional provisions designed to secure dues and demands against corporations by imposing liability therefor upon the stockholders thereof in addition to the stock held by each and by such other means as provided by law, are not self-executing. And that if constitutional provisions merely enact a line of policy or principles without supplying the means by which such policies or principles are to be carried into effect, they are not self-executing and will remain inoperative until rendered effective by subsequent legislation.

The authorities in support of this proposition are abundant and are cited in the brief of counsel for the plaintiff in this case. But it will be seen at a glance by a mere reading of the amendment to the Constitution of November 23, 1903, that this amendment was not designed alone to secure dues and demands against corporations by such means as may be provided by law, but it contains the further provision: ''In no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her.''

I can not understand how this provision of the Constitution could be made more effective by subsequent legislation. I can not understand why this provision is made to depend in whole or in part upon any subsequent legislation. It is not a constitutional provision, in the opinion of this court, merely indicating a line of policy or principle without supplying the means by which such policy and principles are to be carried into effect. It is, as I have said, absolutely prohibitory in its charac-

ter and could not as I can conceive be made more effective by subsequent legislation than it is made by the constitutional provision itself.

In a leading and well considered case found in the 87 Illinois Rep., page 385, the case of *Ida Irene Law et al* v. *The People, ex rel Louis C. Huck, Collector, etc.,* the court, in construing a constitutional provision · of the Constitution of the state of Illinois, say:

"The constitutional provision supposed to be violated by the issuing of these certificates for temporary loans, is the first clause of the twelfth section of Article IX and is this: No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness.

"The language of this clause is clear, explicit and emphatic, that no city shall be allowed to become indebted in any manner or for any purpose beyond the prescribed limit. The city of Chicago was indebted beyond the limit when these certificates were issued, and if they, in any manner or for any purpose, create an additional indebtedness beyond that limit, they are clearly prohibited. The language prescribing the limit is so plain as to admit of no doubt, and forbids all construction and the provision must be enforced as it is written. When the intention of the framers of the Constitution is ascertained, it must, as all will concede, be held paramount to all other powers in the state. It embodies the sovereign power of the state. It is the source to which all the departments of government, and all of its officers must ultimately look, to authorize and sanction their official acts. It is the command of the supreme power of the state and it must be obeyed. Nor is there lodged, in our form of government, in any department or functionary, any authority to dispense with this or other provisions of the fundamental law, or to mitigate its requirements.

"It has also been repeatedly held, and is regarded as settled doctrine, that all negative or prohibitory clauses of this character found in a Constitution execute themselves as legislative provisions, in the same or other language, prohibiting the incurring of such indebtedness, could be no more binding or forcible than the Constitution itself."

It seems to this court, therefore, that to hold that this provision of the amendment to our Constitution of November 23, 1903, was not self-executing and that such provision needed legislative enactment to give it force, would be in effect to hold that the Legislature of Ohio was clothed with authority to enforce or not to enforce this prohibitory provision of the Constitution by subsequent legislation as it might deem best, and that if the Legislature should fail or refuse, for any reason, to enact a law to carry into force and effect this prohibitory provision of the Constitution, that, notwithstanding its clear, explicit and emphatic declaration, that in no case shall any stockholder of a corporation be held individually liable otherwise than for the unpaid stock owned by him or her, that the statute (Section 3258) imposing double liability would continue for all time to be and remain in force.

I can not conceive such to have been the intention and meaning of the framers of this amendment to our Constitution.

It follows that the demurrers of the defendants, John M. Niles and Amanda J. Niles, to the petition of the plaintiff in this case should be sustained and the action of plaintiff dismissed.

*Buroker & Zimmer, Waite & Deaton, T. J. Frank* and *L. D. Johnson,* for the plaintiffs.

*Banta & Banta,* for the demurrer.